**NOT FOR PUBLICATION**

FILED
NOV -5 2010
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ Deputy Clerk

ENTERED
NOV -5 2010
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ Deputy Clerk

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
### RIVERSIDE DIVISION

In re:

Ivan J. Henderson,

Debtor.

Case No.: 6:10-bk-32108-DS

Chapter 13

**MEMORANDUM DECISION AFTER EVIDENTIARY HEARING RE: DEBTOR'S MOTION FOR ORDER DETERMINING VALUE OF REAL PROPERTY, EXTENT OF SECURED CLAIMS, AND EXTINGUISHING THE LIEN OF FCI LENDER SERVICES, INC. (NORMANDY MORTGAGE SERVICING AS PREDECESSOR IN INTEREST)**

(11 U.S.C. §§ 506(a) and 1322(b); FRBP 3012)

Date:  October 4, 2010
Time:  1:30 p.m.
Place: United States Bankruptcy Court
       Courtroom 304
       3420 Twelfth Street
       Riverside, CA 92501

At the above-referenced date and time, the court held an evidentiary hearing on Ivan J. Henderson's (the "Debtor") Motion for Order Determining Value of Real Property, Extent of Secured Claims, and Extinguishing the Lien of FCI Lender Services, Inc. (Normandy Mortgage Servicing as Predecessor in Interest) (the "Motion") in the above-captioned chapter 13 bankruptcy proceeding. The junior secured creditor, Donovan J. Schumacher, et. al. (the "Creditor") opposes the Motion. At the hearing, Dale Parham of Winterbotham Parham Teeple, APC appeared for the Debtor and Martin Phillips of the Law Offices of Martin W. Phillips appeared for the Creditor. Winfield Tuttle testified on behalf of the Debtor and Paul Jacobs testified on behalf of the Creditor. After the evidentiary hearing, the court took the matter under advisement. Having considered the

pleadings, evidentiary record, arguments of the parties and testimony of the witnesses at the hearing, the court makes the following findings of fact and conclusions of law[1] pursuant to Federal Rule of Civil Procedure 52(a)(1), as incorporated by Federal Rule of Bankruptcy Procedure 7052.[2]

## I. STATEMENT OF FACTS

The Debtor filed a voluntary chapter 13 petition on July 15, 2010. The Debtor's principal residence is a 4,155 square foot, four-bedroom, three-bathroom home upon a 7,200 square foot lot located in the Arrowhead Woods community at 28865 Banff Drive, Lake Arrowhead, CA 92352 (the "Property"). The Property currently secures two trust deeds: (1) a first trust deed held by Litton Loan Servicing ("Litton"); and (2) a second trust deed held by the Creditor and serviced by FCI Lender Services, Inc. (Normandy Mortgage Servicing as predecessor in interest) ("FCI").[3] The Debtor's schedules filed on July 15, 2010 scheduled outstanding debt owed to Litton in the amount of $325,086 and outstanding debt owed to the Creditor in the amount of $99,997.

On August 3, 2010, the Debtor filed the Motion, in which the Debtor stated that the fair market value of the Property was $315,000. As set forth in the Motion, based on the amounts set forth in the Debtor's schedules and the Debtor's declaration in support of the Motion, the Property's value would be less than the total amount owed to Litton, effectively rendering the Creditor's junior lien wholly unsecured and susceptible to "lien stripping" under 11 U.S.C. §§ 506(a) and 1322(b) and the well-established principles of *Lam v. Investors Thrift (In re Lam)*, 211 B.R. 36 (9th Cir. BAP 1997), *Zimmer v. PSB Lending Corp. (In re Zimmer)*, 313 F.3d 1220, 1223 (9th Cir. 2002). The Creditor timely opposed the Motion and offered the declaration of James

---

[1] To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent that any conclusion of law is construed to be a finding of fact, it is hereby adopted as such.

[2] Unless otherwise indicated, all "Code," "chapter" and "section" references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330 and all "Rule" references are to the Federal Rules of Bankruptcy Procedure ("FRBP") which make applicable certain Federal Rules of Civil Procedure ("FRCP").

[3] The Debtor erroneously listed FCI as the beneficial holder of the second deed of trust on his original motion to value; FCI is merely the Creditor's servicing agent. The Creditor is the correct party in interest to oppose the Debtor's motion and has acted as such. The Debtor has not objected or otherwise asserted that the Creditor is not the correct party to proceed in this matter.

Uhrenfeldt, real estate broker and President of Normandy Mortgage Servicing Co., to rebut the Debtor's evidence of value. Mr. Uhrenfeldt's declaration asserted that the Property's value falls between $500,000 and $600,000.

On August 24, 2010, the court conducted an initial hearing on the Motion and set an evidentiary hearing to allow both parties to present additional evidence regarding the Property's value. Prior to the evidentiary hearing, both parties submitted supplemental papers, including declarations of licensed California appraisers. Tanner Hoss, the Debtor's appraiser, valued the Property at $350,000, higher than the $315,000 in the Debtor's declaration. Paul Jacobs, the Creditor's appraiser, valued the Property at $580,000. On August 13, 2010, also prior to the evidentiary hearing, Litton filed a proof of claim listing a $385,813.96 secured claim – in contrast to the $325,086 secured claim initially scheduled by the Debtor.[4]

At the evidentiary hearing, the Debtor contended that the Property's value was $350,000 based on the appraisal obtained on his behalf. Winfield Tuttle, the supervisor who jointly conducted the appraisal for the Debtor with the declarant Mr. Hoss, testified that he physically inspected the Property (including the interior of the house), assessed its condition and used a sales comparison approach to reach his $350,000 appraised value. Mr. Tuttle further testified that the majority – approximately 70% – of his appraisal business concerns foreclosed and/or distressed properties, or "REO" properties.[5] Mr. Tuttle testified that he used three REO properties in his sales comparison analysis to determine the Property's value. The Property at issue is not an REO property; it is the Debtor's principal residence. None of the properties used in Mr. Tuttle's comparison were in the Arrowhead Woods development where the Property is located, although they were in Lake Arrowhead. Mr. Tuttle testified that he is somewhat familiar with Arrowhead Woods; he has conducted, on average, 5-10 appraisals per year in that specific

---

[4] If Litton's claim were $325,086 as initially scheduled by the Debtor, based on the $350,000 appraised value of the Property, the relief requested in the Motion could not be granted.

[5] Tuttle's testimony included many references to "REO" properties. A Real Estate Owned ("REO") property is a property owned by a mortgage lender, typically after a foreclosure auction where the property is not sold.

3

development. Additionally, Mr. Tuttle testified that an approximate 10% variance in appraisal values is common and standard in the community, meaning that Mr. Tuttle's appraised value could therefore range from approximately $315,000 to approximately $385,000.

Mr. Jacobs, the Creditor's appraiser, testified that he conducted four separate "drive-by" inspections of the Property (he did not inspect the interior) and used a sales comparison approach to reach a $580,000 appraised value. Mr. Jacobs testified that he used comparable sales of homes in the Arrowhead Woods tract, the specific development where the Property is located and where Mr. Jacobs himself resides. Mr. Jacobs testified that he is very familiar with Arrowhead Woods, not only because he owns a home there but also because he averages 15-20 appraisals per year in that specific development. Mr. Jacobs testified that he did not use REO properties in his appraisal because the Property is not distressed. He further testified that Arrowhead Woods is an exclusive, upscale community with particular amenities that contribute the value of homes in that community.

## II. JURISDICTION

This court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157(a) and 1334(b). This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (K).

## III. DISCUSSION

The value of a secured claim may be determined pursuant to a noticed motion under section 506(a),[6] and the valuation incorporated into the debtor's proposed plan. Fed. R. Bankr. P. 3012; *see also In re Reyes*, 401 B.R. 910 (Bankr. C.D. Cal. 2009). The process of bifurcating a secured claim pursuant to section 506(a) into a secured and unsecured portion based upon the

---

[6] Section 506(a) provides, in relevant part:
> An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506(a)(1).

4

collateral's value has been commonly referenced as "lien stripping." Generally, "lien stripping" is prohibited on a debtor's real property principal residence; a chapter 13 plan may not modify the rights of a creditor whose claim is secured "only by a security interest in real property that is the debtor's principal residence." 11 U.S.C. § 1322(b)(2); see *Nobleman v. American Savings Bank*, 508 U.S. 324, 327-28 (1993). In the Ninth Circuit, however, debtors are able to combine the bifurcation process of section 506(a) with the modification provision of section 1322(b)(2) to effectively "strip off" a junior lien on the debtor's real property principal residence where the lien is *completely or wholly unsecured. See Lam v. Investors Thrift (In re Lam)*, 211 B.R. 36, 40-42 (9th Cir. BAP 1997); *Zimmer v. PSB Lending Corp. (In re Zimmer)*, 313 F.3d 1220, 1223 (9th Cir. 2002). A lien is wholly or completely unsecured if there is not one dollar securing that lien. *See Lam*, 211 B.R. at 41 ("[A] one dollar difference in property value could have a profound effect on a secured creditor's rights. If property valued at $50,000 is encumbered by a first mortgage of $50,000 and a second mortgage of $20,000, the second mortgage has no secured claim under section 506(a)."). If the lien is "stripped," the lienholder's claim will be treated as an unsecured debt under the proposed plan and the lien will remain on the debtor's property until the debt is paid off or the debtor obtains a discharge. *See* 11 U.S.C. § 1325(a)(5)(B).

Notwithstanding a debtor's ability to completely "strip off" wholly unsecured junior liens on principal residences, the general anti-modification provision of section 1322(b)(2) still applies – if even one dollar secures the lien on the principal residence, a debtor may not modify the rights of the creditor and "strip off" the lien. Therefore, if property valued at $50,001 is encumbered by a first mortgage of $50,000 and a second mortgage of $20,000, the second mortgage is secured by a security interest in the debtor's principal residence and cannot be modified under section 1322(b)(2). The lienholder's claim will be treated as a secured claim. *See Lam*, 211 B.R. at 41.

"A debtor bears the burden of proof on the issue of valuation under § 506(a)." *In re Finnegan*, 358 B.R. 644, 649 (Bankr. M.D. Pa. 2006); *see In re Shropshire*, 284 B.R. 145 (Bankr. N.D. Ala. 2002); *In re Brown*, 244 B.R. 603 (Bank. W.D. Va. 2000); *In re Roberts*, 210 B.R. 325 (Bankr. N.D. Iowa 1997); *In re Webb*, 99 B.R. 283 (Bankr. E.D. Pa. 1989); *but see In re Blevins*,

150 B.R. 444 (Bankr. W.D. Ark. 1992)(a creditor objecting to confirmation has the burden of proof on all issues raised in its objection, including valuation of collateral). The relief sought in a motion such as this one is extensive: extinguishing a secured creditor's lien. Indeed, some districts – and some courts within this district – require an adversary proceeding for this type of relief. Because of the extraordinary nature of this relief, the Debtor must have competent, persuasive evidence to establish that the requested relief is justified.

Here, the Debtor did not meet his burden of proof regarding valuation. Where, as here, the residence is occupied and maintained by the Debtor, who intends to remain in the Property, solely relying on unoccupied REO properties as sales comparisons is inappropriate. The Debtor testified that he is in financial distress and unable to keep up with repairs at the present time, and the Debtor's appraiser testified that the Property needs extensive repairs (although the extent of some needed repairs, such as roof repairs, was disputed by the Creditor's appraiser, and the Debtor also testified that he has spent approximately $130,000 on improvements in 2005-2006). However, a property occupied by a debtor who intends to remain there is quite different from a vacant bank-owned property. Further, the Debtor's appraiser did not use any properties within Arrowhead Woods as comparable properties. Mr. Tuttle's testimony revealed that he did not assess any particular value to the Property's location in this tract, while Mr. Jacobs testified that the location and the development's amenities were significant factors in the Property's value. Indeed, Mr. Tuttle testified that he was unfamiliar with all of the rights associated with the Arrowhead Woods development. Although the Debtor's appraiser was able to inspect the property's interior, in contrast to the Creditor's appraiser, this information does not outweigh Mr. Tuttle's failure to adequately take into account the location as well as his sole reliance on REO properties as comparables. Based on these factors, the Debtor has not submitted sufficient evidence to support the proposed value. Finally, Mr. Tuttle conceded that a variance of approximately 10% is common for appraised values. If the Debtor's proposed value of $350,000 is adopted, a standard 10% variance could mean that the value might be as much as approximately $385,000 – nearly the same as the debt owed to the senior lienholder Litton,

according to Litton's proof of claim (the Debtor's schedules indicate that the amount owed to Litton is $325,086).

### IV. CONCLUSION

As discussed above, if the Property's value exceeds Litton's total debt even by one dollar, the Creditor has a secured claim that cannot be modified under section 1322(b)(2). Even using the Debtor's own appraised value and 10% variance, the Property's value is almost identical to the amount of the senior debt asserted by the senior creditor. And when the evidence regarding value is assessed, the Debtor simply has not established that a $350,000 value is appropriate. The deficiencies in the Debtor's appraisal revealed at the hearing lead the court to conclude that the Property's value is greater than the Debtor contends. Accordingly, the Creditor holds a $99,997 secured claim that cannot be modified under section 1322(b)(2) and the principles of *In re Lam* and *In re Zimmer*. The Debtor's Motion is denied.

The Creditor shall submit a proposed judgment consistent with this memorandum.

DATED: November 5, 2010

DEBORAH J. SALTZMAN
United States Bankruptcy Judge

7

**NOTE TO USERS OF THIS FORM:**
1) Attach this form to the last page of a proposed Order or Judgment. Do not file as a separate document.
2) The title of the judgment or order and all service information must be filled in by the party lodging the order.
3) **Category I.** below: The United States trustee and case trustee (if any) will always be in this category.
4) **Category II.** below: List ONLY addresses for debtor (and attorney), movant (or attorney) and person/entity (or attorney) who filed an opposition to the requested relief. <u>DO NOT</u> list an address if person/entity is listed in category I.

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*) **Memorandum Decision After Evidentiary Hearing RE: Debtor's Motion for Order Determining Value of Real Property, Extent of Secured Claims, and Extinguishing the Lien of FCI Lender Services, Inc. (Normandy Mortgage Servicing as Predecessor in Interest)** was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**I. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of **11/5/10**, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

☐ Service information continued on attached page

**II. SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

Ivan Henderson
POB 2937
Blue Jay, CA 92317

Martin Phillips
8180 E. Kaiser Boulevard, Suite 100
Anaheim Hills, CA 92808

Dale Parham
4371 Latham St Ste 105
Riverside, CA 92501

Rod (DS) Danielson (TR)
4361 Latham Street, Suite 270
Riverside, CA 92501

☐ Service information continued on attached page

**III. TO BE SERVED BY THE LODGING PARTY:** Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s), and/or email address(es) indicated below:

☐ Service information continued on attached page

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

August 2010

**F 9021-1.1.NOTICE.ENTERED.ORDER**